# RICHMOND SUPERIOR COURT.

### DECEMBER 24TH, 1841.

---

*GEORGIA*,     } IN CHAMBERS—IN EQUITY,
Richmond County. }     DECEMBER 24TH, 1841.

### THE STATE vs. NATHAN S. KING.

*Habeas Corpus. In the matter of the Infant Child of Anna and Nathan S. King.*

1. When the person in custody is an infant child, and the controversy is between its parents for the possession, the Court will look to the interest of the child, and award the possession to that parent, who will most likely train it properly.

2. The Chancellor will not permit it to be taken out of his jurisdiction.

In the above stated case, this writ has been obtained by *Anna King*, the wife of the defendant, to produce the body of their infant child, about two and a half years old, called *Emily*. And in her petition, she complains, that her husband has taken possession of said infant, and detains it, when the tender years of said infant requires the constant care of its mother. And upon this application the Court granted the writ, and the same being served on the defendant, he produced the said child and made his return to the said writ, and which return in substance is, that he admits that he went to another State, and took his child, and claims the custody of it, by virtue of his parental rights—that the mother is not a fit and proper person to take care of the child—that she neglected it, and is not qualified to attend to its morals or personal comfort—and that he and his wife have separated, and that he has brought a libel for a divorce in this county—and that the mother still retains her youngest child, a boy—and that he has a sister with him who will take charge of the child. And thus stands the case, by the pleadings, between the parties. And when the cause came to a hearing, a mass of evidence was produced relating to the various causes which pro-

duced their separation; and evidence was also adduced, in relation to their capability as parents to discharge their duties to their children. And in deciding on this mass of testimony, the Court will not undertake to state and compare the testimony of each witness with the other; but will proceed and give the conclusions to which it has been brought by said evidence. And in the first place, this Court will not bring into this investigation the conduct of these parties, as to their separation, farther than it may be necessary to see whether it renders either party unfit to have charge of the child *Emily :* and from a comparison of the testimony adduced in this case, the mind of the Court is brought to the following conclusions :— First, the conduct and character of the father, is that of a good moral man, and no objection can be raised against him as a father. And on the part of the mother, there has been a mass of evidence shewing some improper conduct about their money matters, and some imprudent expressions at times, when labouring under feelings of despondence, and from which, and the appearance of the wife, the Court believes, that she is at times subject to feelings of great despondence, and was induced to make imprudent expressions, which she never executed, or intended to execute, and which she has not attempted to fulfil; and so far as relates to her fondness for her children, and her anxious care about them, and industry to maintain them, the evidence is ample in her *favour,* as well as for chastity ; and that by her labour she can support them, and that both father and mother have to live by their labour : and it further appears, that the father assisted the mother to depart for Charleston with both their children—and that one child, a boy, is now about 9 or 12 months old, and the child, *Emily,* is about two years and four months old—and that the father went to Charleston, took the child, *Emily,* from the mother whilst absent from her house, and brought it to Augusta, and now has it in possession : and the before stated writ is brought to have it restored to the mother. These are the material facts upon which the Court is to decide, under the law, between the parties.

The first objection which is urged by the defendant is, that the writ being entitled at Common Law, the Court is bound by the Law to deliver the child to the father : but the jurisdiction which is exercised by the Chancellor is the same as at Common Law.—(See Law

[State vs. King.]

Libra. Mar. page 685, No. 99.) Where the Chancellor grants the writ, he is *Parens Patriæ*, possesses powers over the legal rights of the father which a Common Law Judge does not. In this case, the Judges of the Superior Courts being clothed with both Law and Equity powers, it will look to the prayer of the writ, and see in which capacity the Court is called on to act, and proceed to make its decision accordingly : This Court, therefore, sees nothing in the address of the writ, which will not allow it to exercise its equity powers : as the case made by the petition shows that those powers are invoked in this case.

The question presented to this Court by the foregoing facts, is : What ought the Judge to do in such a case? This Court has had occasion to examine the rule in Chancery in cases like the present— the case of the *State* vs. *Heard*, where most of the authorities referred to in this case, were also referred to in that case ; and as the Law in the case of *Heard*, is equally applicable to this case, I must proceed to declare it the same here ; which is this : That where this writ is granted, and the facts shew that the Court is called on as *Parens Patriæ* to exercise its equitable powers, its great and paramount duty is, to look to the interest and safety of the child—as well as its morals, its education, and even its pecuniary interests : And the legal rights of the father to the custody of his child will not be enforced, if those rights, in any manner, conflict with these interests, or the *welfare of the child*.—(See Law Libra. Mar. 685, No. 90. All the authorities agree as to the rule above laid down ; and it is in the application of the rule to each particular case, that has created some difference of opinion between the Judges, and as the Judges shall, under the facts of each case, believe it to be either for the safety and welfare of the child, or its pecuniary interests, so will they exercise or refuse to exercise this jurisdiction. The question now presented by the facts before the Court, *is :* Will it be for the welfare of this child to leave it in the possession of the father, or return it to its mother ? Upon this point, we have the testimony of Doctors *Eve* and *Garvin*, as well as the opinion of several other witnesses, that this child will be better attended to, and more closely watched in its present state and very tender years, (it being only two years and four or five months old,) by the mother, than it can be attended to by the father, or any other person as a nurse for it ; and particularly

[State vs. King.]

as the child is a female.    And the Court being of the *same opinion* with the Doctors, and other witnesses on the subject—it is therefore ordered by the Court, that the defendant, *Nathan S. King*, deliver the infant child, *Emily*, back to his wife, *Anna*, to be by her nurtured and taken care of, as the exigencies of said child may require; but, upon this express condition, and it is hereby ordered, that said *Anna King* suffer and permit the said *Nathan S. King* to have reasonable access to the said child, through the agency of their friends or otherwise.

But as this Court is not allowed by Law, to make an order which will deprive itself of jurisdiction over the person of this child, and as the father has the same right to apply to this Court, when he thinks the welfare and safety of his child may require it, as the mother ; and, as it appears by the evidence, that *Mrs. King* is now residing in Charleston, and without the jurisdiction of this Court, It is further ordered, that the said *Anna King*, by her friends, appear before the Clerk of this Court, and enter into bond, by such friend or friends, payable to the State of Georgia, in the penal sum of five hundred dollars, conditioned that the child *Emily King*, be not removed without the jurisdiction of this State.    And it is further ordered, that if the said *Anna King* is unable to procure her friends to give said bond, then, the said child *Emily* is to remain under the care of her father, the said *Nathan S. King*, and he permitting the said *Anna King* to have reasonable access to said child *Emily*, through friends or otherwise, from time to time, as may be reasonable.    And it is further ordered, that said *Nathan S. King* pay the cost of this proceeding.    And it is further ordered, that the Clerk of this Court, record this decision, on the minutes of the Court.

Cases cited in this case—Law Library, No. 99, page 408.  5 *East* 220–1.    17th Common Law Rep'ts 122.    9th *Moore's* R. 278.    10 *Vesey, Jr.* 52.    11 *Vesey* 526.    *Margin* 6 *Vesey* 363.

JOHN SHLY, Judge
*Superior Courts, Middle District, Georgia.*